SHOOK BUILDERS SUPPLY COMPANY v. EASTERN ASSOCIATES, INC., ROBERT E. OSBORNE, JANET S. OSBORNE, H. HUGHES MOORE AND JEFFRIE G. MOORE

No. 7425SC898

(Filed 5 February 1975)

Contracts § 27; Rules of Civil Procedure § 56— contract action — summary judgment improperly granted

     In an action to recover an amount allegedly due under the terms of a contract and purported subsequent settlement agreement providing for the completion of four houses and payment for building materials furnished by plaintiff wherein plaintiff's motion for summary judgment was supported by the pleadings, original contract, purported settlement agreement and an affidavit of plaintiff's president, summary judgment was improperly entered for plaintiff since the credibility of plaintiff's president, an interested witness, may itself be such an issue of fact as will take the case to trial, and since it is not clear that the purported settlement agreement is not just a memorandum of successive offers to settle.

APPEAL by defendants from *Winner, Judge,* 26 August 1974 Session of Superior Court held in CATAWBA County. Heard in the Court of Appeals 16 January 1975.

Plaintiff instituted this action to recover damages for breach of contract. The complaint alleged that defendants, officers and agents of Eastern Associates, Inc., a housing contractor, had become indebted to plaintiff for building materials furnished in the construction of four houses. The parties entered into a contract providing that plaintiff would complete the houses and recover the amount of the indebtedness from profits upon sale. If no profits were realized, defendants would be liable for the debt plus additional expenses and service charges.

Plaintiff further alleged that, after the execution of this contract, costs of completing construction on the houses exceeded original estimates, and

> "on December 7, 1971, a meeting was held between Defendant Robert E. Osborn, Defendant H. Hughes Moore and officers and agents of the Plaintiff and an oral agreement was entered into; thereafter, on January 6, 1972, the Plaintiff received from the Defendants a paper writing dated December 17, 1971, a copy of the same being attached and marked, 'Plaintiff's Exhibit B'; that Plaintiff executed said

agreement and mailed it back to Defendant H. Hughes Moore on January 26, 1972, along with a letter in which he agreed that the settlement figure of $16,000.00 would apply through and including March 1, 1972; a copy of said letter is hereto attached marked, 'Plaintiff's Exhibit C' and made a part hereof."

Attached to the complaint was the following:

### "PLAINTIFF'S EXHIBIT 'B'

Since John's handwritten notes of December 7, 1971, still refers to the 5% as a part of the total settlement and since we have released the final deed to you per our verbal agreements, we would like for you to confirm the minutes as spelled out below of the December 7, 1971, meeting between Mr. Bill Reece, Mr. John Shook, Mr. Robert Osborne, and Mr. H. H. Moore.

s/ H. H. MOORE

Minutes of December 7, 1971, meeting:

Prior to the December 7 meeting we had agreed, by telephone, to release the deed for the last of the four Eastern Associates, Inc. houses in Eastview Acres at a reduced selling price of $25,000 and in return John Shook had agreed to relinquish the 5% interest charge as spelled out in our contract and agreement with Shook Builders dated July 15, 1970. This 5% charge amounts to approximately $2500.00.

During the meeting of December 7, 1971, Mr. Moore and Mr. Osborne requested that, since the July 15 estimate to complete including outstanding bills, land value, and loans of $96,000 for the (4) houses was exceeded by such a large amount and had actually run beyond the total estimated selling price of the houses, Mr. Shook should make some concession as far as the total due from Eastern Associates to Shook Builders was concerned. Mr. Reece stated that the $96,000, as he recalled, did not include the $10,000 estimate of Mr. Shook to complete the houses from the point at which they stood on July 15, 1970. However, Mr. Shook agreed to forfeit the 1% carrying charge as referred to in our July 15, 1971 agreement, in order to get settled provided the balance were paid in full within 30 days

from December 7, 1971. The balance being approximately ~~$13,720.50~~ $16,000.00. (J.H.S.; R.E.O. 2/5/72) The 1% reduction, amounting to $7,000.00, would be re-added to the balance if the 30 day requirement was not met. The balance of ~~$13,720.50~~ $16,000.00 (J.H.S.; R.E.O. 2/5/72) was over the total selling price of the four houses.

> s/ H. H. MOORE
> s/ R. E. OSBORNE
> s/ JOHN H. SHOOK"

Plaintiff returned the minutes to defendants on 26 January 1972, under a cover letter which reads in part:

"Enclosed are the final figures up to this date, which is somewhat more than the figure we discussed December 7, 1971. The figure we talked about on the 7th. was stated as an approximate amount, but some other charges have come in since then plus, several mistakes we corrected by going over the invoices more thoroughly.

I feel that I made a mistake in the beginning, by the concession of the 5% and the service charges that Shook Builders Supply was entitled to receive. I did offer to make this concession provided the account would be cleared up in 30 days from Dec. 7th. I did not hear anything from you till January 6th, 1972 and Bill Reece gave me the paper you had typed, being somewhat similar to our conversation of the 7th. By this time the 30 day offer proposed for settlement had expired, and you still did not mention any arrangement or intention about getting this matter settled. Therefore I am taking a different view about this settlement which I will explain in some detail.

. . . .

I am making one more proposal that I think is fair to all involved under the circumstances that exist. According to our records the loss is $14,995.19 and I am asking in addition $1,004.81 which is a total of $16,000.00 to help take care of the unforeseen cost that we have and some that we might incur. Providing the above terms are met in full on or before March 1, 1972. If we do not come to an agreement by then, we will take whatever procedures are necessary to get a settlement."

Defendants in their answer admitted entering into the original contract but alleged plaintiff's breach and counterclaimed for $10,000.00 in damages. They denied all allegations concerning a settlement. In response to plaintiff's requests for admissions, defendant Hughes Moore denied the genuineness of the paperwriting Exhibit "B" but admitted that it was signed by all parties.

Plaintiff then moved for summary judgment, and the trial court granted the motion as to defendants Eastern Associates, Inc., Robert E. Osborne, and H. Hughes Moore. From judgment against them, jointly and severally in the amount of $23,000.00 plus interest, defendants appealed to this Court.

*Tate, Weathers and Young, by E. Murray Tate, Jr., for plaintiff appellee.*

*Sowers, Avery and Crosswhite, by William E. Crosswhite, for defendant appellant.*

ARNOLD, Judge.

Rule 56 (c) of the North Carolina Rules of Civil Procedure provides in part that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." The moving party has the burden of showing that there is no triable issue of fact. For this reason his papers "are carefully scrutinized." 6 Moore, Federal Practice § 56.15[8] (2d ed. 1971). *See Koontz v. City of Winston-Salem,* 280 N.C. 513, 186 S.E. 2d 897 (1972) ; *Kessing v. Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823 (1971).

In the instant case, plaintiffs' motion for summary judgment was supported by: (1) the pleadings; (2) Exhibit A, the original contract; (3) Exhibit B, the purported settlement; and (4) defendants' admission to signing Exhibit B. Plaintiff also submitted the affidavit of John Shook stating that the facts set out in the motion were true, that he participated in the negotiations leading up to and the execution of Exhibits A and B, and that defendants had paid none of the amounts agreed upon. After carefully reviewing the record, we are of the opinion that plaintiff's papers are insufficient to foreclose issues of fact raised by the pleadings.

As plaintiffs' president, John Shook is an interested witness. His credibility itself may be such an issue of fact as will take the case to trial. *See Cross v. United States,* 336 F. 2d 431 (2d Cir. 1964); *United States v. United Marketing Association,* 291 F. 2d 851 (8th Cir. 1961). In *Lee v. Shor,* 10 N.C. App. 231, 235, 178 S.E. 2d 101, 104 (1970), this Court said: "The fact that the witness is interested in the result of the suit has been held sufficient to require the credibility of his testimony to be submitted to the jury. *Sonnentheil v. Christian Moerlein Brewing Co.,* 172 U.S. 401, 408, 19 S.Ct. 233, 236, 43 L.Ed. 492, 495." *See generally* 3 Barron and Holtzoff, Federal Practice and Procedure, § 1234 (Wright ed. 1958).

John Shook's affidavit in effect verifies the motion for summary judgment, which in turn reiterates the allegations in the complaint. It does not establish that plaintiff's allegations unquestionably are true. Moreover, considering the minutes of the December meeting in conjunction with Shook's letter explaining the corrected figures, we cannot agree with plaintiff that as a matter of law these minutes represent an integrated settlement agreement and are not just a memorandum of successive offers to settle. An affidavit as to legal effect does not make it so.

We are mindful that under Rule 56(e) "an adverse party may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Nevertheless, defendants' failure to file affidavits in opposition to plaintiff's motion is not fatal since plaintiff initially has not met the burden imposed by Rule 56(c) of showing the absence of a genuine issue of material fact. *See Page v. Sloan,* 281 N.C. 697, 190 S.E. 2d 189 (1972); *Whitley v. Cubberly,* 24 N.C. App. 204, 210 S.E. 2d 289 (1974); *Tolbert v. Tea Co.,* 22 N.C. App. 491, 206 S.E. 2d 816 (1974); *Borden, Inc. v. Wade* and *Moore v. Brown,* 21 N.C. App. 205, 203 S.E. 2d 666 (1974). *See also Adickes v. Kress & Co.,* 398 U.S. 144 (1970). Plaintiff, as movant for summary judgment, did not make it perfectly clear that it was entitled to judgment as a matter of law. Summary judgment was error.

Reversed.

Judges VAUGHN and MARTIN concur.