980 F.2d 728
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Christopher P. WHEAT; Melissa R. Wheat, Plaintiffs- Appellants,
v.
CHAMPION INTERNATIONAL CORPORATION, Defendant-Appellee.
 No. 91-1196.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 5, 1992
Decided: December 10, 1992
 
 Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Woodrow Wilson Jones, Senior District Judge. (CA-91-88-C-A)
 William Benjamin Smith, Price, Smith, Bednaril & Crosland, Charlotte, North Carolina, for Appellant.
 Elizabeth McConnell Warren, Roberts, Stevens & Cogburn, P.A., Asheville, North Carolina, for Appellee.
 Mark A. Michael, Michael & Meierhoefer, Charlotte, North Carolina, for Appellant.
 W.D.N.C.
 REVERSED AND REMANDED.
 Before PHILLIPS, Circuit Judge, BUTZNER, Senior Circuit Judge, and STAMP, United States District Judge for the Northern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Christopher P. Wheat appeals the district court's dismissal of his action pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c). We reverse and remand for further proceedings.
 
 
 2
 * In reviewing the court's dismissal under Rules 12(b)(6) and 12(c), we accept the facts as stated by Wheat.
 
 
 3
 Wheat, a Florida resident, was a metal worker for Byrd Construction Company, a sheet metal firm. Byrd contracted with Champion International Corporation, a Connecticut corporation, to do repair work on the hood of one of Champion's paper-drying machines in Canton, North Carolina.
 
 
 4
 Byrd sent Wheat and other employees to install metal flashing on the hood, which was a large, flat metal surface. An electricallyoperated crane track that passed from one end of the mill to the other ran directly over the hood. Bare high-voltage electrical cables, which were used to power the crane, hung along the bottom of the track, within approximately one foot of the dryer hood.
 
 
 5
 The dryer itself was shut down so that Wheat and his coworkers could install the flashing. Wheat and his coworkers asked the foreman for Byrd whether the power line extending above the hood could be turned off before they climbed on top of the hood. Wheat and his coworkers also objected to the work because they lacked adequate means to secure themselves by safety lines to the hood. A Champion safety engineer was present and participated in the discussion. Nevertheless, Champion did not turn off the power despite requests to do so, as this would have stopped work throughout the facility. In addition, Byrd's foreman told Wheat that if he refused to climb to the top of the dryer hood he would lose his job.
 
 
 6
 While Wheat was repairing the hood, a piece of metal flashing being handed to him came into contact with the electrical cables. Wheat suffered an electrical shock and fell to the ground. Wheat sued Champion, alleging that it was negligent in refusing to disconnect the overhead electrical cables, requiring Wheat and others to work under conditions that it knew to be unsafe, requiring Wheat and others to do work without adequately being tied to a safety line, and failing to take appropriate steps to make the work place safe.
 
 
 7
 Champion moved to dismiss Wheat's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and for judgment on the pleadings pursuant to Rule 12(c). The district court dismissed the case, finding that contributory negligence appeared on the face of Wheat's pleading and thus served as an insurmountable bar to recovery under North Carolina law. Wheat appeals.
 
 II
 
 8
 In federal courts, federal law governs whether the evidence is sufficient to submit a case to the jury. Wratchford v. S.J. Groves & Sons, Co., 405 F.2d 1061, 1064-66 (4th Cir. 1969). Broadly speaking for the purpose of this case, federal law allocates to the jury resolution of factual disputes and the reasonable inferences that can be drawn from the facts. State law defines the parties' obligations and rights. Byrd v. Blue Ridge Cooperative, 356 U.S. 525, 533-40 (1958). Here Federal Rule of Civil Procedure 12 has resolved the factual issues in favor of the plaintiff at this stage of the proceedings. This leaves only the question whether reasonable inferences can be drawn from the facts that should be decided by a jury. For this inquiry we turn to state law to determine what inferences exist concerning the charge of contributory negligence with respect to uninsulated, live electric power lines and the effect of an employer's order that sent an employee to undertake a risky task.
 
 North Carolina law provides:
 
 9
 Every person having the capacity to exercise ordinary care for his own safety against injury is required by law to do so, and if he fails to exercise such care, and such failure, concurring and cooperating with the actual negligence of the defendant contributes to the injury complained of, he is guilty of contributory negligence. Ordinary care is such care as an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury.
 
 
 10
 Clark v. Roberts, 263 N.C. 336, 343, 139 S.E.2d 593, 597 (1965). Champion has the burden of proving that Wheat was negligent and that such negligence contributed to his injury. Williams v. Carolina Power & Light Co., 296 N.C. 400, 404, 250 S.E.2d 255, 258 (1979).
 
 
 11
 In North Carolina, as elsewhere, a person aware of an electrical wire and of its highly dangerous nature has a legal duty to avoid coming into contact with it. This precept "does not mean, however, that a person is guilty of contributory negligence as a matter of law if he contacts a known electrical wire regardless of the circumstances and regardless of any precautions he may have taken to avoid the mishap." Williams, 296 N.C. at 404, 250 S.E.2d at 258. Whether working near a high-voltage line is contributory negligence as a matter of law depends on "[t]he knowledge and experience of the injured party, the nature of his work, and the need for working in the vicinity of the line, whether the contact with the wires was the result of an inadvertent slip or other unexpected mishap." Partin v. Carolina Power & Light Co., 40 N.C.App. 630, 640, 253 S.E.2d 605, 612 (1979).
 
 
 12
 Application of the Partin factors depends on the reasonable inferences that can be drawn from the facts. Wheat had knowledge, experience, and awareness of the danger, but the safety engineer and Wheat's foreman insisted that he needed to work in the vicinity of the high-voltage cable. His contact with the wires was unintentional. A jury could draw the inference that the safety engineer's refusal to turn off the power implicitly gave assurance to Wheat and his foreman that Wheat could work on the hood in safety. The question then arises whether a reasonably prudent person should have accepted the safety engineer's assessment of the situation.
 
 
 13
 Closely related to the safety engineer's conduct is an additional circumstance bearing on the issue of contributory negligence. The Byrd company foreman's threat to fire Wheat if he did not work on the hood despite the live electric wire cannot be imputed to Champion because Byrd was an independent contractor, not an agent of Champion.
 
 
 14
 Nevertheless, the foreman's order is relevant in determining whether Wheat was contributorily negligent. When a foreman gives an order to an employee to undertake an obviously risky task, the issue of contributory negligence depends on whether a reasonably prudent person under similar circumstances would comply with the order. Noble v. John L. Roper Lumber Co., 151 N.C. 76, 78, 65 S.E. 622, 623 (1909). This principle of law is applicable even though the defendant did not give the order. For example, in Swaney v. Peden Steel Co., 259 N.C. 531, 131 S.E.2d 601 (1963), the employee of a building contractor sued the supplier of a latently defective product for injuries caused by the defect after the employer instructed his employee to use the product. Holding that the employee was not contributorily negligent as a matter of law, the court explained that a plea of contributory negligence is insufficient as a matter of law "unless the order plaintiff obeyed was so obviously dangerous that a reasonably prudent man under similar circumstances would have disobeyed it and quit the employment rather than incur the hazard." 259 N.C. at 543, 131 S.E.2d at 610; see also Cook v. Export Leaf Tobacco Co., 50 N.C. App. 89, 96, 272 S.E.2d 883, 888 (1980).
 
 
 15
 Whether Wheat was guilty of contributory negligence or was acting as a reasonably prudent person when he climbed on the hood depends on all the circumstances and the rational inferences that one can draw from the conduct of the safety engineer and Wheat's foreman. Federal law allocates to a jury resolution of these issues because it is the function of the jury, not the judge, to choose "among competing rational inferences in the resolution of factual questions." Wratchford, 405 F.2d at 1065. In this instance, North Carolina law is not to the contrary:
 
 
 16
 Contributory negligence becomes a question of law only when plaintiff's evidence so clearly establishes it that no other reasonable inference may be drawn therefrom. Where the nature and attributes of the act relied on to show negligence contributing to the injury can only be correctly determined by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to determine its quality as a matter of law.
 
 
 17
 Swaney, 259 N.C. at 544-45, 131 S.E.2d at 611 (quotation marks and citations omitted).
 
 
 18
 The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.
 
 REVERSED AND REMANDED